IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01864-MEH-KMT

MICHAEL RYSKIN,

    Plaintiff,

v.

BANNER HEALTH, INC., an Arizona non-profit corporation,
MICHELLE JOY,
SHIRLEY NIX,
THOMAS SOPER,
JOSEPH BONELLI, and
JOHN ELLIFF,

    Defendants.

**ORDER ON MOTION TO COMPEL DISCLOSURE OF DOCUMENTS**

Plaintiff has filed a motion seeking to compel Defendants to produce documents which Defendants assert are protected by statutory privileges created by Colorado's Professional Review Act and Quality Management Act [docket #52]. For the following reasons, the Court **grants** the Plaintiff's motion.

**A.**     **Background**

Plaintiff was employed at the Sterling Regional MedCenter by Defendant Banner until he was terminated on March 25, 2009. While still so employed, the MedCenter's Medical Executive Committee (MEC), which has medical privilege credentialing authority at the MedCenter, was tasked with re-credentialing Plaintiff. All parties agree that the typical re-credentialing period was two years. During the time period at issue, consideration of Plaintiff's application for re-credentialing took place at the same time as the evaluation of Plaintiff's continued employment.

A "Credentials Committee" conducted an initial review of Plaintiff's application and

recommended to the MEC that Plaintiff's application be denied in its entirety. The MEC ultimately decided to extend Plaintiff's credentials by three months (instead of the customary two years) while Plaintiff's continued employment was under review. By the end of the three months, Plaintiff's fate at the MedCenter was sealed, and no further application for medical privileges was made.

Plaintiff contends that his termination was wrongful. In pursuit of this claim, Plaintiff seeks the documents associated with the work of the Credentials Committee and the MEC. Defendants assert that the peer review privilege created by Colo. Rev. Stat. § 12-36.5-101 *et seq.*, and the quality management privilege created by Colo. Rev. Stat. § 25-3-109, bar production of the documents. Plaintiff asserts that several infirmities in Defendants' conduct overcome the effect of the asserted privileges. These arguments will be discussed below.

**B.     Analysis**

"The Colorado legislature . . . recognized the need to encourage professional peer review in the health care industry. To that end, the legislature enacted the Colorado Professional Review Act ("CPRA"), which provides qualified immunity to those who participate in the peer review process." *Pfenninger v. Exempla, Inc.*, 116 F. Supp.2d 1184, 1199 (D. Colo. 2000). Moreover, in passing the quality management law, the Colorado General Assembly declared necessary the implementation of quality management functions "to evaluate and improve patient and resident care." It created a requirement to collect information by such licensed or certified health care facilities in order to provide "a complete and thorough evaluation and improvement of the quality of patient and resident care." Colo. Rev. Stat. § 25-3-109. Both laws create a privilege from disclosure [*see Center For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1264 (10th Cir. 2003); *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 648 (D. Colo. 2004)] that, absent some basis for finding that the privileges have not been properly preserved, would arguably protect the sought-

after documents from being discoverable here.

Under Colorado law, as in most jurisdictions, "statutory privileges must be strictly construed and the claimant of a privilege bears the burden of establishing the applicability of the privilege." *Hartmann v. Nordin*, 147 P.3d 43, 51 (Colo. 2006) (quoting *People v. Dist. Court*, 743 P.2d 432, 435 (Colo. 1987)).[1] "Because a privilege or other basis for nondisclosure can operate to withhold relevant information from a litigant, we exercise caution in determining whether the claimed protection exists." *DeSantis v. Simon*, 209 P.3d 1069, 1073 (Colo. 2009). "Once the privilege attaches, the burden shifts to the challenging party to establish waiver." *Hartmann*, 147 P.3d at 51. Because it appears to me that the Defendants have made a *prima facie* case of privilege applicability, the Plaintiff has the burden to establish waiver.

Plaintiff makes two arguments that merit consideration here. First, the Defendants did not afford Plaintiff his due process rights pursuant to statutory requirements and, thus, Defendants may not claim the protection of the privileges. Second, the Defendants have produced documents that fall within the privileges and, through such disclosure, have waived the privileges. I find that for purposes of this discovery issue, Plaintiff has carried his burden on both arguments.

The Sterling Regional MedCenter's Professional Review/Corrective Action Plan states that, if any situation involving grounds for an investigation comes to the attention of any member of the medical staff, the CEO, or the Board of Directors, any such person with knowledge must request a professional review in writing. Thereafter, the person who is the subject of the investigation is entitled to certain procedural due process rights. Further, the Professional Review/Corrective Action Plan and the Fair Hearing Plan state that certain adverse recommendations or actions entitle a

---

[1] Concerning statutory and other privileges, the Supreme Court has stated: "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 709-10 (1974).

3

physician to a hearing.

Defendants counter Plaintiff's arguments by placing significant weight and importance on the "nuances between the grant of medical privileges by a licensed hospital and employment by an entity that operates the hospital." Response Brief at 3-4. According to Defendants, "privileges are granted by the Banner Board of Directors upon recommendation from the [MedCenter's] Medical Executive Committee." *Id.* at 4. Defendants then note that a physician has a right to due process if the committee makes an adverse recommendation against his medical privileges. However, Defendants contend that there was no investigation and no adverse recommendation and, thus, no trigger for due process rights (which they acknowledge were not afforded). I disagree.

First, Plaintiff alleges that in December 2007, he was summoned to appear before the MEC concerning allegations of substandard clinical treatment and failure to follow hospital policies. Subsequently, in connection with his application for renewal of privileges, he was initially recommended for denial and later given only three months of continued privileges rather than the requested (and customary) two years. Shortly thereafter, his employment with Defendant Banner was terminated. It appears to me from the record that, continuously from December 2007 until his termination from Banner, Defendants were "investigating" the Plaintiff.

Second, concerning whether an adverse decision was made, of the numerous "recommendations or actions" that trigger the right to a hearing, the Fair Hearing Plan includes reducing or limiting privileges or denial of requested privileges. Plaintiff requested the customary renewal of privileges, which was two years, and was initially recommended for complete denial of all privileges. Later, his privileges were reduced to three months. In plain language, these actions are either a recommendation for denial of requested privileges, an actual denial of requested privileges, a recommendation for reduction in or limitation of privileges, or an actual reduction in

4

or limitation of privileges. I believe the language of the Fair Hearing Plan cannot be limited solely to the breadth of privileges a doctor possesses, but also must include a temporal parameter as well. A doctor who may be scheduling procedures or surgeries in the future would certainly view a three-month privilege period as "reduced" or "limited," as do I.

Therefore, based on the record before me, for purposes of discovery (and, to emphasize, not admissibility), Plaintiff has carried his burden to demonstrate that his due process rights were triggered by Defendants' actions, but were not afforded under the law or the Plans. As Defendants readily concede, the statutory privileges apply only if the Defendants complied with the law and the Plans' requirements. Banner Health Defendants' Response, at 6. Thus, because Plaintiff was not given the required "entitlements for physicians subject to the peer review process, including a hearing to consider adverse recommendations," *id.*, the privileges do not bar production of the documents here.

In addition, Defendants admit they have produced – either in discovery or attached to their filings in court – documents that would be covered by the privileges. Defendants assert that these disclosures were inadvertent or were, so they believed, merely duplicative of documents the Plaintiff should already have. After reviewing the disclosures, the Court finds that Defendants' conduct is "inconsistent with maintaining the confidential nature" of the privileged documents. *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). There are many documents the parties have produced to me that appear to fall within the peer review and/or quality management privileges, if the privileges applied here. With such a broad disclosure having been already made, I conclude it would be inconsistent to find that the privileges have been preserved here. Therefore, the privileges have been waived.

One other consideration guides me under the circumstances presented here. Plaintiff asserts

wrongdoing in the actions of the various Banner Defendants, ultimately resulting in the loss of his job. As I understand them, the privileges at issue were generally intended to shield the peer review and quality management deliberations from discovery by persons who bring lawsuits claiming that medical care was inadequate. The privileges thus allow peers or a hospital to consider and judge the provision of medical care without the threat that their determination of the quality of care will be disclosed to someone who may use those deliberations to advance their personal interests. Here, however, Plaintiff seeks not to gain advantage from the Defendants' determinations of the quality of care provided (for, indeed, evidence of substandard care is damaging to the Plaintiff's interests), but to investigate the motive of the Banner Defendants in their actions. I do not believe that disclosure here frustrates the purposes of the privileges. Plaintiff seeks not the conclusions of the relevant committees, but their motives. To shield the documents in this lawsuit would be to frustrate the search for truth. Given the Colorado courts' admonition to strictly construe statutory privileges, I find that disclosure is required under the unique circumstances of this case.

**C.  Conclusion**

Accordingly, for the reasons stated above, the Court **grants** the Plaintiff's Motion to Compel Disclosure of Documents [filed May 4, 2010; docket #52] insofar as it seeks production of documents withheld under the peer review and quality management privileges.

Dated this 9th day of July, 2010, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge