IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01864-MEH-KMT

MICHAEL RYSKIN,

      Plaintiff,

v.

BANNER HEALTH, INC., an Arizona non-profit corporation,
MICHELLE JOY,
SHIRLEY NIX,
THOMAS SOPER,
JOSEPH BONELLI, and
JOHN ELLIFF,

      Defendants.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT
## RELATED TO QUALIFIED IMMUNITY

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendants' Joint Motion for Summary Judgment Related to Qualified

Immunity [filed August 30, 2010; docket #75].  By Order of Reference to United States Magistrate

Judge, this matter has been referred to me to conduct proceedings in this civil action pursuant to 28

U.S.C. § 636(c) and Fed. R. Civ. P. 73.  The matter is fully briefed, and the Court orders that, for

the reasons that follow, the motion is **granted in part and denied in part**.

### STATEMENT OF MATERIAL FACTS

1.      Plaintiff is an obstetrician/gynecologist ("OB/GYN") who was employed by Banner

Health to provide services at Sterling Regional MedCenter (SRMC) in Sterling, Colorado pursuant

to a contract dated July 5, 2005.  Final Pretrial Order, Stip Fact 4.3.  In 2007, the contract was

renewed for an additional two years until July 5, 2009.  *Id.*, Stip Fact 4.4.

2.      In November 2006, Plaintiff's hospital privileges had been renewed for a two-year period ending November 21, 2008.  Pl. Exh. 2 at 19: 21-25; Defs. Exh. A-28, docket #79-36.

3.      In the absence of problems or concerns and if the physician's record is "clean," reappointment and renewal of privileges is usually for a term of two years.  Pl. Exh. 2 at 22: 7-17.

4.      SRMC is obligated, by law and accreditation standards, to have quality management and professional review processes in place for continued quality assurance and improvement of care.  Final Pretrial Order, Stip Fact 4.7.

5.      SRMC has adopted Bylaws of the Medical Dental and Podiatric Staff; included in those bylaws is a section relating to the creation and duties of a Peer Review Committee.  Defs. Exh. A-26, docket #79-26.

6.      Article 13 of the Bylaws incorporates the referenced rules and regulations, fair hearing plan, professional review/corrective action plan and other medical staff policies.  *Id.*; *see also* Pl. Exh. 4, "Medical Staff Focused Review Process (Peer Review Policy)"; Pl. Exh. 6, "Professional Review/Corrective Action Plan"; Pl. Exh. 7, "Fair Hearing Plan of the Medical, Dental and Podiatric Staff."

7.      The stated purpose of the Peer Review Policy, which was in place at all times relevant to this matter, is "to guide the Medical Staff through an objective peer review process to maintain quality patient care, facilitate education, and improve performance at Sterling Regional MedCenter."  Pl. Exh. 4; Pl. Exh. 2 at 12:3-13.

8.      The Peer Review Policy states that a physician will be notified and asked to attend a committee meeting if his or her case has been initially reviewed and found to have a "problem" defined by the policy.  Pl. Exh. 4.

9.      Defendant Nix served on the SRMC Peer Review Committee at all times relevant to

this matter.  Final Pretrial Order, Stip Fact 4.8.  Defendant Bonelli served on the Peer Review Committee in 2007.  Defs. Exh. D.

10.     The peer review process is not a disciplinary process.  Pl. Exh. 4.  Rather, "[d]isciplinary actions are processed through the Medical Executive Committee in accordance with the Medical Staff Bylaws, Professional Review/Corrective Action Plan, Fair Hearing Plan and Medical Staff policies."  *Id.*

11.     Defendants Nix, Soper, Bonelli and Elliff served on the Medical Executive Committee ("MEC") at the SRMC at all times relevant to this matter.  Final Pretrial Order, Stip Fact 4.8.

12.     SRMC also has a Credentials Committee with responsibility for ensuring that providers allowed to practice in the facility have the appropriate credentials and training to ensure patient safety.  Pl. Exh. 2 at 16: 13-18.  The committee is responsible for reviewing applications for credentials and privileges and makes recommendations for approval or disapproval of such applications to the MEC.  *Id.* at 19: 8-10; Pl. Exh. 3 at 30: 6-25, 31: 1-5.

13.     Defendant Nix served on the Credentials Committee for all times relevant to this matter.  Pl. Exh. 2 at 8: 3-8.

14.     In late fall 2007, Plaintiff received a letter from Nix notifying him that two of his cases were sent out for external peer review.  Defs. Exh. A at 80: 16-25; Pl. Exh. 1 at 81: 1-10.  The Plaintiff believed it was a letter of information, which was "very dry and descriptive" and contained the names of patients and the issues presented.  Pl. Exh. 1 at 81: 11-25.

15.     The outside review, performed by a board-certified OB/GYN, reflected a Standard of Care Determination of "Q-3: An occurrence in the medical/surgical care or process; significant or potentially significant impact on patient morbidity; opportunity for improvement" for both cases.

Defs. Exh. B.

16.     At a November 6, 2007 meeting, the MEC considered the outside review and a report by Nix of other issues, including Plaintiff's alleged failure to make daily rounds of his patients. Defs. Exh. C.  The committee recommended that (1) Plaintiff be made aware of the findings, (2) the Peer Review Committee review all information about Plaintiff's performance, as well as the external reviewer's report; and (3) Plaintiff's practice information should be reviewed, including complication rate, length of stay and readmissions within 30 days.  *Id.*[1]

17.     The SRMC CEO, Michelle Joy, verbally notified the Plaintiff that responses were received from the external review, that they were negative, and that he should expect to receive a letter from the MEC.  Pl. Exh. 1 at 83: 4-14.  The Plaintiff was alarmed because he had not been involved in the process and, now, he was expecting to receive a letter of discipline from the MEC. *Id.* at 14-25.

18.     At a November 27, 2007 meeting, the Peer Review Committee considered the external review and other issues raised concerning Plaintiff's practice.  Defs. Exh. D.  The committee assigned several fact-finding "actions" and recommended that documentation be gathered to support the issues raised and that all matters be referred to the MEC for further action.  *Id.*

19.     Plaintiff expressed concerns that he was not involved in the peer review process to Lisa Sanford, CNO at SRMC.  Pl. Exh. 1 at 85: 13-25, 86: 1-6.  Plaintiff learned that the next meeting of the MEC would be the following day, December 4, 2007.  *Id.* at 86: 19-25, 87: 1-12.  At Ms. Sanford's suggestion, Plaintiff contacted Dr. Elliff to speak with him before the meeting.  *Id.*

20.     Elliff did not discuss the details of the issues raised by the peer review process with the Plaintiff before the meeting.  Pl. Exh. 1 at 92: 3-14.  Elliff instructed Plaintiff to wait for the

---

[1]Defendants contend that the MEC made further recommendations, but the meeting minutes provided reflect only those recommendations listed herein.  *See* Defs. Exh. C, docket #75-3.

outcome of the meeting.  *Id.* at 92: 24-25, 93: 1-2.

21.     At the December 4, 2007 meeting, the MEC considered the Peer Review Committee report and concerns raised by certain physicians about the Plaintiff's work, including:

a.     Dr. Faycal expressed concern about a patient with high blood pressure who was told by Plaintiff that she could not take high blood pressure medicine.  The patient miscarried at 24 weeks and was very dissatisfied with Plaintiff.

b     Dr. Nix reported dissatisfaction with Plaintiff's care of one of her patients because Plaintiff did not examine the patient despite the presence of a mass, which subsequently enlarged.

c.     Dr. Soper reported a concern that Plaintiff discontinued his care of a patient upon requesting a consultation from Dr. Soper.  Plaintiff referred to the patient as a "f'ing whore and a c-u-n-t and that she was nuts, crazy, and didn't need to be in the hospital."  Dr. Soper, however, believed that the patient "wasn't any of those things. She was sick, and you know, needed help."

d.     Dr. Allen, who had come to SRMC to assist over the Thanksgiving holiday, complained about Plaintiff's hand-off of patients.

It was also reported to the MEC that nursing staff complained about Plaintiff failing to make daily rounds of patients, and that Plaintiff was performing circumcisions without privileges and with improper equipment.  Defs. Exh. E; Defs. Exh. G; Ex. H; Ex. I.

22.     The MEC also considered a number of patient complaints including:

a.     A patient awaiting emergent surgery complained about overhearing Plaintiff "cussing and stating how mad he was to be in surgery at 3:00 am."

b.     A complaint that "the doctor I had an appointment with was very rude! When I asked a question, he told me not to concern myself and kept talking to his nurse."

c.      A complaint that Plaintiff did not come to see a patient "until the next day after I was admitted."

d.      A complaint from a patient with an ovarian mass that Plaintiff was rude and did not examine her.

e.      A complaint that Plaintiff "never answered my questions or explained anything."

Defs. Exh. J.

23.      After this meeting, the MEC held a special meeting with the Plaintiff during the evening of December 4, 2007.  The committee provided the Plaintiff with a copy of the external review, and he responded with detailed explanations of his care and why he believed the review was incorrect.  Pl. Exh. 1 at 93: 8-25, 94:1-25, 95: 1-11.

24.      Because he was not provided any documentation to review before the meeting, the Plaintiff also wrote a follow-up letter to the MEC on December 11, 2007 providing additional information and explanations concerning the issues raised.  Defs. Exh. L.  In that letter, Plaintiff also expressed his concerns regarding the peer review process.  *Id.*

25.      Satisfied with Plaintiff's response to the concerns raised at the December 4, 2007 meeting, the MEC sent Plaintiff a letter.  Final Pretrial Order, Stip Fact 4.17.  The December 18, 2007 letter to Plaintiff, drafted by Elliff, described the purpose of the December 4, 2007 meeting as having a "colleague to colleague discussion," informed Plaintiff that the December 11, 2007 letter would be reviewed at the MEC's next meeting, and reminded him of his obligations under bylaws, rules and regulations of SRMC.  Defs. Exh. M.

26.      The MEC informed Plaintiff that the 2007 proceedings were informal discussions, not an investigation.  Final Pretrial Order, Stip Fact 4.18.

27.     After thinking about the December 18, 2007 letter, the Plaintiff "realized that the entire ordeal was a travesty, yet it was in full compliance with the bylaws." Defs. Exh. A at 128: 23-25, 129: 1-5.  Thus, the Plaintiff sought to make changes to the SRMC bylaws.  *Id.* at 129: 11-12; 130: 11-14.

28.     In early 2008, Plaintiff introduced the concept of a Physician's Council to Soper and the entire medical staff.  The Medical Staff approved the creation of the Council.  Final Pretrial Order, Stip Fact 4.19.

29.     According to the SRMC bylaws any amendments to the bylaws need to be approved by the Banner Board of Directors.  Final Pretrial Order, Stip Fact 4.20.

30.     It is required that physicians reapply for privileges every two years.  The standard appointment period is two years.  In November 2008, Plaintiff's medical staff privileges at SRMC would have expired.  Therefore, in April 2008, Plaintiff reapplied for medical staff privileges at SRMC.  Final Pretrial Order, Stip Fact 4.21.

31.     After completing his application, Plaintiff received a call from the medical staff office about his answer to question #2 on page 28 of his application in which Plaintiff answered "no" to a question as to whether there had been any "proceedings or investigations" relating to his "clinical competence ... or professional conduct."  Final Pretrial Order, Stip Fact 4.22.  Fleurette Groves, Medical Staff Services Manager, told Plaintiff on October 10, 2008 that, based on his current file, he would need to correct his answer to "yes."  Pl. Exh. 20.  Plaintiff refused to do so.  *Id.*

32.     Plaintiff's application and file were then forwarded to the Credentials Committee.  Final Pretrial Order, Stip Fact 4.23.  The committee recommended that Plaintiff "not be reappointed" with a comment that "he answered no about previous proceedings/investigations." Defs. Exh. A-28, docket #79-36.  The matter was then referred to the MEC.  Final Pretrial Order, Stip Fact 4.23.

33.     In the fall 2008, complaints arose concerning Plaintiff's use of privileged and confidential peer review information, his interactions with patients and their families, and his relationship with medical staff members and hospital staff.  Defs. Exhs. N-Q, S, V.

34.     In a November 4, 2008 meeting, the MEC reviewed the Credentials Committee recommendation not to reappoint the Plaintiff.  Pl. Exh. 28.  The MEC recommended that the Banner Board of Directors reappoint the Plaintiff for a period of three months, November 21, 2008 through February 21, 2009, "during which time the MEC [would] schedule a meeting with [Plaintiff] to discuss recent patient complaints and disruptive behavior complaints as well as his answer to the application question pertaining to current or past investigations/proceedings of clinical competence or professional conduct."  *Id.*

35.     This recommendation was accepted by the Banner Governing Board.  Final Pretrial Order, Stip Fact 4.24.

36.     On November 17, 2008, Joy wrote to Plaintiff informing him that his request for reappointment to the SRMC Medical Staff and for renewal of his clinical privileges was granted for a period of three months.  Defs. Exh. T.  Joy stated, "[t]his action was taken in order to afford the [MEC] the opportunity to address several outstanding issues that have arisen during the last few months regarding your professional conduct and clinical practice at SRM. The [MEC] will be scheduling a meeting with you shortly to discuss these issues in more detail."  *Id.*

37.     On November 18, 2008, Plaintiff responded to Joy seeking review and investigation by the Physician's Council in accordance with the recently amended bylaws.  Pl. Exh. 26.  Plaintiff also requested that he be provided a detailed description and supporting documentation of the identified issues, "as [he] had not been approached with any questions or concerns regarding [his] conduct and [was] unaware of any."  *Id.*

38.     On December 3, 2008, Elliff wrote to the Plaintiff on behalf of the MEC inviting him to attend a special meeting "as part of an informal, confidential intra-professional review process, prior to making any final recommendations." Defs. Exh. V. Elliff further informed the Plaintiff that "no formal investigation has been initiated and no adverse action has been taken"; thus, Elliff asserted, Plaintiff was "not yet entitled to exercise any of the rights under the Medical Staff Professional Review/Corrective Action Plan or the Fair Hearing Plan." *Id.* Furthermore, Elliff notified the Plaintiff that the proposed changes to the bylaws had not yet been approved by the governing board of Banner, and the MEC was the appropriate committee to address the outstanding issues. *Id.*

39.     At Joy's request, Plaintiff met with Joy on December 9, 2008 regarding the outstanding issues. Pl. Exh. 14 at 59: 7-20. Joy informed Plaintiff of the complaints raised against him, and Plaintiff expressed his displeasure with Joy's performance as CEO. *Id.* at 60:17 - 63:13; Pl. Ex. 1 at 173:10 - 175:25.

40.     During the meeting, Joy and Plaintiff mutually agreed to execute the 90-day termination notice of Plaintiff's contract with Banner so long as the MEC would take no further action on the outstanding issues. Pl. Exh. 14 at 68: 24-25, 69: 1-10; Pl. Exh. 1 at 176: 18-24.

41.     The following day, December 10, 2008, Joy informed Plaintiff by email that the MEC would still need to meet with the Plaintiff informally "to bring closure to the medical staff side of things." Defs. Exh. X. Joy gave Plaintiff the choice of meeting with the MEC or with Doug Webster, SRMC Medical Director. *Id.*

42.     Plaintiff responded that the "[m]eeting on Friday will void the agreement we came to yesterday." *Id.* Joy responded that since the "[e]mployment contract and medical staff are two separate issues," she "did not have the authority to overrule the decision of the [MEC] for an

informal meeting." *Id.* Plaintiff responded, "I understand. I will meet with Dr. Webster." *Id.*

43.     On December 11, 2008, Plaintiff wrote a letter to Joy, Dr. Webster and members of the MEC referring to the termination of his contract saying, "Let us document that it will be a unilateral action taken by Banner Health, Inc. and I made no requests to [Joy] or to any of you as conditions for this action." Pl. Exh. 15.

44.     That same day, Plaintiff met with Dr. Webster. Webster memorialized this meeting in a January 6, 2009 memo to the MEC (copied to Joy) in which he recommended that "the MEC consider the accusations presented and a pattern of behavior agreed upon, which, if followed, would prevent further similar issues from arising." Pl. Exh. 16. Further, Webster recommended that "as the issues represent uninvestigated accusations and as there were no documented adverse clinical outcomes involved, the MEC should consider the issues closed." *Id.* The Plaintiff presented his letter to Webster at the meeting. *Id.*

45.     The December 12, 2008 special meeting with the MEC was canceled. Defs. Exh. A-38.

46.     On January 7, 2009, Soper wrote a letter to Plaintiff informing him that the MEC reviewed the information provided by Webster and "concluded that the outstanding issues have been satisfactorily addressed and are considered closed." Defs. Exh. A-40, docket #79-48.

47.     Plaintiff's request for Medical Staff membership and clinical privileges were extended to March 25, 2009 at Plaintiff's request to be consistent with the notice of termination of Plaintiff's contract with Banner. *Id.*

48.     Plaintiff later told an employment recruiter that he had not had any adverse action as to his clinical privileges. Defs Exh. DD at 320: 15-20.[2]

---

[2]Defendants assert that Plaintiff "agrees, and reports to employers, that his privileges have not been subject to any adverse action"; however, the pages of the deposition transcript to which

## DISCUSSION

### I.      Standards of Review

#### A.      Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  However, the non-moving party has the burden of showing that there are issues of material fact to be determined.  *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . .  if that

---

they refer for support are not attached to the motion.  *See* docket #75 at 8, ¶ 35.

evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

B.    Health Care Quality Improvement Act ("HCQIA")

The HCQIA "provide[s] qualified immunity from damages actions for hospitals, doctors and others who participate in professional peer review proceedings." *Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1333 (10th Cir. 1996). The HCQIA provides, in pertinent part:

> If a professional review action (as defined in section 11151(9) of this title) of a professional review body meets all the standards specified in section 11112(a) of this title, ...--(A) the professional review body, (B) any person acting as a member or staff to the body, (C) any person under a contract or other formal agreement with the body, and (D) any person who participates with or assists the body with respect to the action, shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action.

42 U.S.C.A. § 11111(a)(1). The Act defines "professional review body" as "a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C. § 11151(11) (2010); *see also Pfenninger v. Exempla, Inc.*, 116 F. Supp. 2d 1184, 1198 (D. Colo. 2000). "Professional review activity" is defined as "an activity of a health care entity with respect to an individual physician–(A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity, (B) to determine the scope or conditions of such privileges or membership, or (C) to change or modify such privileges or membership." 42 U.S.C. § 11151(10) (2010).

Under these provisions of the HCQIA, Defendants Banner, Joy, Soper, Elliff, Nix and

Bonnelli are entitled to immunity from money damages stemming from "professional review actions" so long as the standards for such actions set out in § 11112(a) have been satisfied.  *See Brown*, 101 F.3d at 1333; *Pfenninger*, 116 F. Supp. 2d at 1198-99.  Pursuant to section 11112(a), the professional review action must be taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a); *Pfenninger*, 116 F. Supp. 2d at 1199.

A professional review action is presumed to have met these standards necessary for immunity. 42 U.S.C. § 11112(a). Courts apply an objective standard in determining whether a professional review action is reasonable under 42 U.S.C. § 11112(a).  *Brown*, 101 F.3d at 1333. "[T]he party contesting immunity 'bears the burden of proving that the peer review process was not reasonable.'"  *Pfenninger*, 116 F. Supp. 2d at 1201 (quoting *Bryan v. Holmes Regional Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994)).

If a plaintiff challenging a professional review action proves, by a preponderance of the evidence, any one of the four requirements was not satisfied, the professional review body is no longer afforded immunity from damages under the HCQIA.  *Brown*, 101 F.3d at 1333 (citing *Islami v. Covenant Med. Ctr., Inc.,* 822 F. Supp. 1361, 1377-78 (N.D. Iowa 1992)).   Therefore, in considering a motion for summary judgment based upon HCQIA immunity, the Court must ask "[m]ight a reasonable jury, viewing the facts in the best light for [the nonmovant], conclude that he

has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of § 11112(a)?"   *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 32 (1st Cir. 2002) (citing *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992) (concluding that summary judgment would not be proper if the plaintiff raised a genuine issue of fact material to the determination of whether the defendant met one of the HCQIA standards)).

C.      Colorado Professional Review Act ("CPRA")

Similarly, the Colorado Professional Review Act ("CPRA") provides qualified immunity to those who participate in the professional review process.  Part I of the CPRA states, in part:

(1) A member of a professional review committee, a witness before a professional review committee, or any person who files a complaint or otherwise participates in the professional review process shall be immune from suit in any civil or criminal action, including antitrust actions, brought by a physician who is the subject of the review by such professional review committee, if such member made a reasonable effort to obtain the facts of the matter as to which he acted, acted in the reasonable belief that the action taken by him was warranted by the facts, and otherwise acted in good faith within the scope of such professional review committee process and if such witness or participant acted in good faith within the scope of such professional review committee process.

(2) The governing board, the individual members of such board, and the entity which has established a peer review committee pursuant to section 12-36.5-104, the board's staff, any person acting as a witness or consultant to the board, any witness testifying in a proceeding authorized under this article, and any person who lodges a complaint pursuant to this article shall be immune from liability in any civil action brought against him or her for acts occurring while acting in his or her capacity as board member, staff, consultant, or witness, respectively, if such individual was acting in good faith within the scope of his or her respective capacity, made a reasonable effort to obtain the facts of the matter as to which he or she acted, and acted in the reasonable belief that the action taken by him or her was warranted by the facts. Any person participating in good faith in lodging a complaint or participating in any investigative or administrative proceeding pursuant to this article shall

be immune from any civil or criminal liability that may result from such participation. Colo. Rev. Stat. § 12-36.5-105 (2010).  The enactment of Part II of the CPRA was "necessary for the state to comply with the provisions of the federal [HCQIA]."  *Id.* at § 12-36.5-202.  Part II provides immunity from damage liability to professional review committees and those who participate in the review process in conformance with the provisions of the HCQIA.  *See id.* at § 12-36.5-203.

## II.    Analysis

Defendant seeks immunity in this case pursuant to the federal HCQIA and the state CPRA. Though the statutes are similar in many respects, they contain certain differing standards and provisions that may apply to this action.  Therefore, the Court will analyze application of the statutes separately.

### A.    HCQIA Immunity

In the present motion, Defendants seek immunity for actions by the SRMC Peer Review Committee and the MEC regarding the Plaintiff's conduct in both 2007 and 2008.  Plaintiff asserts that Defendants failed to meet their statutory obligations with respect to "adverse actions" taken during the fall 2007 peer review process, in October 2008 when the Credentials Committee recommended that he not be reappointed, and in November 2008 when the MEC reappointed him and renewed his privileges for three months, as opposed to the standard two-year appointment.

Under the HCQIA, the term "professional review action" means

an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.

42 U.S.C. § 11151(9) (2010).  "The term 'adversely affecting' includes reducing, restricting, suspending, revoking, denying, or failing to renew clinical privileges or membership in a health care entity."  *Id.* at § 11151(1).  In contrast, professional review *activities* (defined *supra* at I.B., p. 12) are generally precursors to professional review actions.  *Singh*, 308 F.3d at 36.  The Third Circuit explains the difference as follows:

> The definition of "professional review action" encompasses decisions or recommendations by peer review bodies that directly curtail a physician's clinical privileges or impose some lesser sanction that may eventually affect a physician's clinical privileges. "Professional review actions" do not include a decision or recommendation to monitor the standard of care provided by the physician or fact-finding to ascertain whether a physician has provided adequate care. These are "professional review activities."

*Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 634 (3d Cir. 1996).  Immunity under the HCQIA does not depend upon whether the actions surrounding a professional review *activity* comply with the statute but, rather, whether a professional review *action* meets the statutory requirements.  *Wood v. Archbold Med. Ctr., Inc.*, -- F. Supp. 2d -- , 2010 WL 3717294, *55 (M.D. Ga. Sept. 13, 2010); *see also Mathews*, 87 F.3d at 634 ("Because [defendant's] letter was not a professional review action, the district court correctly held it did not have to meet the standards set forth in 42 U.S.C. § 11112(a).").

With these principles in mind, the Court will analyze each instance identified by Plaintiff to determine first whether the challenged actions are "professional review actions" subject to a reasonableness inquiry under the HCQIA and, if so, whether disputed facts exist concerning whether the actions were taken in compliance with the HCQIA.

### 1. Fall 2007 Proceedings

In the fall 2007 the following peer review activity took place: (1) Defendant Nix sent two of Plaintiff's cases out for external review; (2) the MEC considered the external review and other

issues concerning the Plaintiff at a regular meeting, then referred the matters to the Peer Review Committee; (3) the Committee gathered additional information, considered it at their regular meeting and recommended further action by the MEC; (4) the MEC met to review the Peer Review Committee recommendation, then held a special meeting with the Plaintiff; and (5) the MEC considered the Plaintiff's input and explanations regarding the outstanding issues and determined that the issues were closed.

Plaintiff contends that, although Defendants consistently characterized the proceedings involving the Peer Review Committee and MEC in the fall 2007 as "informal" and "peer to peer discussions," the Defendants later redefined the proceedings as an "adverse action" when SRMC questioned Plaintiff's negative response to a question on his 2008 application for reappointment asking "[a]re there presently or has there previously been any proceedings or investigations taken place at any hospital or other organization relating to your clinical competence or your professional conduct?"  The Plaintiff refers to his application, a copy of which is docketed at #79-28 through #79-34, and to the subsequent recommendation to deny Plaintiff reappointment and privileges.

The Court disagrees that any questions regarding Plaintiff's application response necessarily imply that Defendants considered the fall 2007 proceedings to constitute an "adverse action."  The application question at issue is found at docket #79-33, p. 1, and is the second question on the page (the document contains no page numbers).  *See also* Pl. Exh. 20.  A review of the questions reveals that only the first question referred to the term "adverse action" and asked whether the applicant has suffered any adverse actions with respect to privileges and/or staff appointment.  Docket #79-33.  None of the other questions, including the second question, referred to the term "adverse action."

Moreover, the Court disagrees that the fall 2007 proceedings constitute adverse review actions because they supposedly resulted in a recommendation to deny reappointment and clinical

privileges.  The stated reason for the recommendation to deny reappointment, made nearly one year after the fall 2007 proceedings, was the Plaintiff's negative answer to the attestation question Plaintiff gave on his application.  *See* Defs. Exh. A-28, docket #79-36.  The Plaintiff has presented no evidence from which a reasonable jury could conclude that the recommendation was made as a result of any discussions and/or investigations taken during the 2007 peer review proceedings.

Rather, the Court looks at the actions themselves to determine whether they meet the statutory definition of "professional review action."  With respect to the MEC's initial actions in sending two of Plaintiff's cases out for external review, then considering the review and other issues raised concerning Plaintiff's practice at a regular meeting and referring the matters to the Peer Review Committee, the Court finds such actions to be fact-finding activities not subject to the reasonableness inquiry.

Likewise, actions taken by the Peer Review Committee amount simply to fact-finding as evidenced by the several "action/assignments" and the Committee's recommendations to procure documentation to support allegations made against the Plaintiff, which are listed on the November 27, 2007 meeting minutes.  Defs. Exh. D.  In fact, Plaintiff sets forth in the briefing that "[t]he peer review process is not intended to be a disciplinary process" but, rather, "the [MEC] is the intended vehicle through which disciplinary actions are processed."  Docket #89 at 4, ¶¶ 12, 13.

Thereafter, the Peer Review Committee referred the matters to the MEC for further action; the MEC then met to review the Peer Review report and consider the outstanding issues regarding the Plaintiff.  The MEC held a special meeting with the Plaintiff the same day to continue its fact-finding activities; once the Plaintiff provided his own input and further information concerning the outstanding issues (including at the meeting and in a follow-up letter), the MEC closed its proceedings.

The Plaintiff has failed to provide sufficient evidence that would allow a jury to conclude that Defendants engaged in "professional review actions" in the fall 2007, which would necessitate an inquiry into the reasonableness of the actions. Thus, the Court finds that all peer review proceedings conducted during the fall 2007 regarding the Plaintiff were "fact-finding" in nature and do not constitute "professional review actions" pursuant to the HCQIA. No inquiry into the reasonableness of the 2007 peer review proceedings is necessary. The motion is **granted** in this respect and the Court finds Defendants are immune from any damages arising from the fall 2007 proceedings.

2.      2008 Credentials Committee Recommendation on Reappointment

The SRMC Credentials Committee gathers information and makes recommendations to the MEC "regarding the credentials of all applicants for appointment and reappointment" for medical staff membership and clinical privileges. Defs. Exh. A-26, docket #79-26. It functions as a "document review" committee and has responsibility for ensuring that providers allowed to practice at the SRMC have the appropriate credentials and training to ensure patient safety. Pl. Exh. 2 at 16: 13-25, 17: 1-5. On "rare" occasions, the committee interviews an applicant. *Id.*

The form "Recommendation of Credential Committee for Reappointment" lists several factors the committee may consider in determining whether to recommend approval or denial of reappointment applications, including the physician's health status, conduct, clinical knowledge, technical proficiency and competence. Defs. Exh. A-28, docket #79-36. In addition, the committee may recommend not only approval or denial of the application, but also that the applicant be reappointed with certain "provisions." *Id.* Thus, as an entity authorized to gather information and make recommendations for the approval or denial of clinical privileges, the Credentials Committee is a "professional review body" ("any committee of a health care entity which conducts professional

review activity") pursuant to 42 U.S.C. § 11151(11) that engages in "professional review activity"

("an activity of a health care entity with respect to an individual physician– (A) to determine

whether the physician may have clinical privileges with respect to, or membership in, the entity, (B)

to determine the scope or conditions of such privileges or membership, or (C) to change or modify

such privileges or membership") pursuant to  42 U.S.C. § 11151(10).

Defendant Nix served on the Credentials Committee in 2008.  Pl. Exh. 2 at 8:10-14.  On

October 20, 2008, the Credentials Committee recommended that Plaintiff "not be reappointed" for

medical staff membership and clinical privileges.  The Court finds that this recommendation is a

"professional review action" within the meaning of 42 U.S.C. § 11151(9) ("recommendation of a

professional review body which is taken or made in the conduct of professional review activity,

which is based on the competence or professional conduct of an individual physician ... and which

affects (or may affect) adversely the clinical privileges, or membership in a professional society, of

the physician").  Thus, to determine whether Nix is immune from any money damages resulting

from this action, the Court will proceed to analyze whether the Plaintiff has raised a genuine issue

of fact material to the determination of whether Nix failed to meet any one of the HCQIA standards.

Plaintiff asserts that all four standards have not been met by Defendant.  However, the Court

finds that Plaintiff has demonstrated disputed issues as to the second, third and fourth standards

concerning whether the committee made a reasonable effort to obtain facts concerning the

reappointment, whether Plaintiff was afforded adequate notice and hearing procedures or other

procedures as are fair to him under the circumstances, and whether the recommendation was made

with a reasonable belief that the action was warranted by any facts known after meeting the notice

and hearing requirements.  *See* 42 U.S.C. § 11112(a).

a.      Reasonable Investigation

For HCQIA immunity to attach to a professional review action, the decision must be made "after a reasonable effort to obtain the facts of the matter." 42 U.S.C. § 11112(a)(2); *see also Brown*, 101 F.3d at 1333. The relevant inquiry under § 11112(a)(2) is whether the totality of the process leading up to the professional review action evidenced a reasonable effort to obtain facts. *Mathews*, 87 F.3d at 637.

Although the Plaintiff received a call from Ms. Groves, Medical Staff Manager,[3] saying that she believed he incorrectly answered "no" to a question on the application, there is no evidence that she or anyone else questioned the Plaintiff about the remainder of his application or notified the Plaintiff that the committee was considering recommending denial of his request for reappointment. In addition, there is no evidence that the Committee sought any facts concerning Plaintiff's application. Considering this dearth of information, a reasonable jury could find that the committee took its action after an unreasonable effort to obtain facts about the application. *Cf. Pfenninger*, 116 F. Supp. 2d at 1202 (court found reasonable effort to obtain facts where committee reviewed 20 years' patient care history, sought input from physicians and nurses with first-hand knowledge of complaints, and allowed plaintiff to present his side of the story).

### b. Adequate Notice and Procedures

A professional review action must be taken "after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3). The following relevant conditions, if met, satisfy the notice and hearing requirement of § 42 U.S.C. § 11112(a)(3):

> A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) of this section with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):

---

[3]There is no indication whether Ms. Groves is/was a member of the Credentials Committee.

(1) Notice of proposed action

The physician has been given notice stating --

(A)(i) that a professional review action has been proposed to be taken against the physician,

(ii) reasons for the proposed action,

(B)(i) that the physician has the right to request a hearing on the proposed action,

(ii) any time limit (of not less than 30 days) within which to request such a hearing, and

(C) a summary of the rights in the hearing under paragraph (3).

. . .

A professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3) of this section.

42 U.S.C. § 11112(b) (2010). Under these principles, the Court must ask whether the Plaintiff "has shown by a preponderance of the evidence, that the defendants did not provide him with fair and adequate process under the circumstances." *Singh*, 308 F.3d at 40.

Plaintiff claims he was afforded no notice nor opportunity to be heard before the recommendation was issued. Docket #89 at 13, ¶ 49. Because there is no evidence that the Credentials Committee contacted the Plaintiff prior to issuing its recommendation for denial, a jury might reasonably conclude that the Defendants failed to provide Plaintiff fair and adequate process.

Defendants argue that SRMC's Fair Hearing Plan "provides that a recommendation for denial of reappointment is only deemed adverse (triggering formal notice and hearing processes) when recommended by the [MEC]." Docket #95 at 2. The Fair Hearing Plan states, in pertinent part,

A recommendation or action listed in Section 1-1 shall be deemed adverse action only when it has been:

A. Recommended by the Medical Executive Committee; or

...

E. Imposed automatically.

Pl. Exh. 7 at 2, § 8.1.2.  The plan does not define "imposed automatically"; however, if an action is taken without any investigation or fact-gathering, then one must assume the action is taken "automatically."

Nevertheless, "HCQIA immunity is not coextensive with compliance with an individual hospital's bylaws. Rather, the statute imposes a uniform set of national standards." *Poliner v. Texas Health Sys.*, 537 F.3d 368, 380 (5th Cir. 2008) ("Provided that a peer review action as defined by the statute complies with [its] standards, a failure to comply with hospital bylaws does not defeat a peer reviewer's right to HCQIA immunity from damages.").  Thus, the Court need not determine whether an action complies with SRMC's bylaws to find immunity under the HCQIA.  Instead, the Court analyzes the action in accordance with statutory standards.

Here, the Court finds the Plaintiff has provided sufficient evidence from which a jury may conclude that Defendant Nix failed to meet HCQIA's second, third and fourth standards for her participation in the Credentials Committee recommendation to deny Plaintiff's reappointment.

The motion is **denied** with respect to HCQIA immunity for the 2008 Credentials Committee recommendation.

3.      2008 MEC Recommendation on Reappointment and Privileges

The Credentials Committee recommendation was made to the MEC, on which Defendants Nix, Soper, Bonelli, Elliff and Joy served in 2008.  Pl. Exh. 28.  The MEC met on November 4, 2008 to consider the recommendation together with issues that had recently arisen regarding Plaintiff's conduct.  The MEC determined at that meeting to recommend reappointing the Plaintiff for a period of three months, rather than the requested two years, "during which time the MEC [would] schedule

23

a meeting with [Plaintiff] to discuss recent patient complaints and disruptive behavior complaints as well as his answer to the application question pertaining to current or past investigations/ proceedings of clinical competence or professional conduct." *Id.*  The Banner Governing Board approved the recommendation on November 13, 2008.  Defs. Exh. A-28, docket #79-36.

As stated above, a "professional review action" includes a "recommendation of a professional review body which is taken or made in the conduct of professional review activity ... and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician."  42 U.S.C. § 11151(9)   "The term 'adversely affecting' includes reducing, restricting, suspending, revoking, denying, or failing to renew clinical privileges or membership in a health care entity."  *Id.* at § 11151(1).  The parties stipulate that the standard appointment period is two years.  Final Pretrial Order, Stip Fact 4.21.  Here, Plaintiff applied for a two-year reappointment of his privileges; yet, the MEC rejected his request and granted him reappointment for only three months to review his competence and complaints raised against him. The Court finds the MEC's recommendation to be a "professional review action" in which the MEC reduced or restricted Plaintiff's requested clinical privileges.  *See Mathews*, 87 F.3d at 634 ("[t]he definition of 'professional review action' encompasses decisions or recommendations by peer review bodies that directly curtail a physician's clinical privileges"); *see also Pfenninger*, 116 F. Supp. 2d at 1201 (finding a recommendation and approval of conditional reinstatement of privileges to be a "professional review action").

In addition, the Court finds the Plaintiff has raised genuine issues of fact material to the determination of whether Defendants met the third and fourth standards necessary for HCQIA immunity.  A professional review action must be taken "after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the

physician under the circumstances." 42 U.S.C. § 11112(3). The Court must ask whether the Plaintiff "has shown by a preponderance of the evidence, that the defendants did not provide him with fair and adequate process under the circumstances." *Singh*, 308 F.3d at 40.

Plaintiff claims that he was first notified of the MEC's recommendation on November 17, 2008, nearly two weeks after it was made and four days after it was approved by Banner. Defendants do not dispute Plaintiff's claim. Thus, the recommendation was made and approved without the Plaintiff's knowledge or input in the process. Under these circumstances, a jury might conclude that the MEC gave the Plaintiff insufficient notice and no opportunity to be heard before the recommendation was made.

Defendants argue that the "MEC rejected the [Credentials Committee] recommendation and granted [Plaintiff's] request for renewal of his clinical privileges for three months. ... Conclusory allegations aside, renewal of privileges is not, by definition, an action or recommendation "reducing, restricting, suspending, revoking, denying, or failing to renew clinical privileges." Docket #95 at 3. The Court disagrees. Defendants stipulate that two years is a standard reappointment period at SRMC; thus, any recommendation to reduce that period, particularly a reduction of 21 months, "may affect adversely the clinical privileges or membership."

Defendants also contend that, because Plaintiff subsequently did not apply for an extension of his privileges past his termination date for fear the MEC might deny them, the Plaintiff "cannot defeat immunity by complaining about a lack of process when he openly acknowledges avoiding the process for fear of a bad outcome." *Id.* Defendants' argument is misplaced. If Defendants were to argue that Plaintiff failed or refused to participate in the process *before* the recommendation was made, the argument may be persuasive. Nevertheless, the argument itself raises simply fact questions that should be resolved by a jury as to the reasonableness of the MEC's actions.

Finally, Defendants argue that Plaintiff "reports to employers that his privileges have not been subject to any adverse action." *Id.* at 5. Defendants cite to a portion of Plaintiff's deposition transcript that is not attached to the motion. A portion that *is* attached reflects Plaintiff's testimony that he answered "no" to a recruiter's question whether he had ever had any adverse action to his privileges. Defs. Exh. DD at 320: 15-20. This testimony, if anything, simply raises credibility questions that cannot be resolved on summary judgment (and may provide impeachment material at trial).

The Court finds the Plaintiff has provided sufficient evidence from which a jury may conclude that Defendants Nix, Soper, Bonelli, Elliff, Joy and Banner failed to meet HCQIA's third and fourth standards for their participation in the MEC recommendation to reappoint the Plaintiff to medical staff and renew clinical privileges for a period of three months. The motion is **denied** with respect to HCQIA immunity for the 2008 MEC recommendation.

### B.    CPRA Immunity

As set forth above, the CPRA contains two parts; the first provides immunity from suit under certain circumstances (Colo. Rev. Stat. § 12-36.5-105) and the second provides immunity from damages in accordance with the HCQIA (Colo. Rev. Stat. § 12-36.5-203). Although the CPRA is similar in many respects to the HCQIA, a primary difference is that the CPRA does not impart a presumption that professional review activities are undertaken for the purpose of assuring quality care and patient safety. *North Colorado Med. Ctr., Inc. v. Nicholas*, 27 P.3d 828, 841 n.7 (Colo. 2001) (en banc). Thus, under the second part of the CPRA, which is "intended to be responsive to the specific requirements" of the HCQIA and grants immunity from damages to professional review bodies, their members, parties in contract with them, and other participants in the professional review process when they act in accordance with the HCQIA (*see id.* at 845), the Court finds that,

for the foregoing reasons, Defendants Nix, Soper, Bonelli, Elliff, Joy and Banner have demonstrated no issues of material fact exist with respect to the 2007 peer review proceedings, but have failed to demonstrate there exist no genuine issues of fact material to the determination of whether they met HCQIA standards in the 2008 Credentials Committee recommendation and 2008 MEC recommendation. Thus, with respect to Defendants' request for immunity provided by Part II of the CPRA, the Court **grants the motion in part** regarding the 2007 peer review proceedings, and **denies the motion in part** regarding the 2008 Credentials Committee recommendation and 2008 MEC recommendation.

Under Part I of the CPRA, the criteria for immunity depends upon the status of the party seeking immunity. *Id.* at 841 (citing Colo. Rev. Stat. § 12-36.5-105). Here, both a governing board (Banner) and participants not affiliated with the governing board (individual Defendants) serving in a professional review process seek immunity.

### 1.     Peer Review Process Participants

Defendants Nix, Soper, Bonelli, Elliff and Joy seek immunity from the peer review processes concerning the Plaintiff in 2007 and 2008. "The plain language of § 12-36.5-105(1) addresses immunity for two different types of parties: members of professional review committees and participants in the peer review process who are not professional review committee members." *Nicholas*, 27 P.3d at 842-43. Committee members are immune from suit if: (1) the member made a reasonable effort to obtain the facts of the matter; (2) the member acted in the reasonable belief that the action taken was warranted by the facts; and (3) the member otherwise acted in good faith within the scope of the review process. *Id.* at 843. Participants who are not committee members are entitled to immunity from suit if they have acted in good faith within the scope of the professional review process. *Id.*

The CPRA defines "professional review committee" as "any committee authorized under the

provisions of this article to review and evaluate the professional conduct of and the quality and appropriateness of patient care provided by any physician licensed" in Colorado. *Id.* at 844 (quoting Colo. Rev. Stat. § 12-36.5-102(3)). "Authorized professional review committees must satisfy the following statutory conditions: (1) they must be composed of a majority of physicians; (2) they must be established by the hospital's medical staff, its governing board, or a combination thereof; and (3) they must operate pursuant to written bylaws, approved by the hospital's governing board, that are in compliance with the CPRA." *Id.* (citations omitted). At issue here are the Peer Review Committee and the MEC in 2007 and the Credentials Committee and the MEC in 2008. No party disputes that these committees fall within the statutory definition of "professional review committees."

### a.     2007 Peer Review

Under the CPRA, "a challenge to the peer review process is only allowed after the hospital's governing board has made its final decision." *Crow v. Penrose-St. Francis Healthcare Sys.*, 169 P.3d 158, 166 (Colo. 2007) (citing Colo. Rev. Stat. § 12-36.5-106(8)). In 2007, the Banner Governing Board made no decision with respect to the peer review process concerning the Plaintiff. Thus, Plaintiff's claims, if any, arising from the 2007 peer review process are not ripe because he has not exhausted his administrative remedies in the peer review process. *Id.* at 168. The motion is **granted** in this respect and Defendants Nix, Soper, Bonelli, Elliff and Joy are immune under the CPRA from suit as to Plaintiff's first, second and fourth claims to the extent they arise from the 2007 peer review process.

### b.     2008 Peer Review

As set forth above, in 2008, the Banner Governing Board approved the MEC's recommendation to limit Plaintiff's request for reappointment to three months (following the Credentials Committee's recommendation to deny reappointment). The Court finds Plaintiff has

exhausted his remedies as to the 2008 peer review process leading up to the Board's decision. *See Crow*, 169 P.3d at 168. Thus, the Plaintiff must demonstrate genuine issues of fact exist that are material to the determination of whether Defendants Nix, Soper, Bonelli, Elliff, Joy and Banner acted in good faith during the peer review process.

(1)      Nix, Soper, Bonelli, Elliff

Committee members are immune from suit if: (1) the member made a reasonable effort to obtain the facts of the matter; (2) the member acted in the reasonable belief that the action taken was warranted by the facts; and (3) the member otherwise acted in good faith within the scope of the review process. *Nicholas*, 27 P.3d at 843.

The only Defendant to serve on the Credentials Committee in 2008 is Nix. As set forth above, the Court finds that, because the committee made the recommendation to deny reappointment without notifying the Plaintiff, a jury may conclude that the committee took its action after an unreasonable effort to obtain facts about the application. In the same vein, a jury might determine that, without sufficient facts, Nix could not have had a reasonable belief that the action was warranted. As such, the Court **denies** the motion and finds that Nix is not immune from claims arising from the 2008 Credentials Committee recommendation to deny reappointment.

Likewise, Nix, Soper, Bonelli and Elliff served on the MEC in 2008 and determined to recommend three months reappointment as opposed to Plaintiff's requested (and the standard) two years. The MEC reached its determination without notifying the Plaintiff; thus, as set forth above, the Court finds a reasonable jury may conclude the recommendation was made without the Plaintiff's knowledge or input in the process and, thus, was unwarranted without sufficient facts. The Court **denies** the motion and finds Nix, Soper, Bonelli and Elliff are not immune from claims arising from the 2008 MEC recommendation to limit reappointment to three months.

(2)      Joy

Although Joy is listed as an attendant at the November 4, 2008 MEC meeting (as well as the November 6, 2007 meeting), there is no indication whether she was a committee member. Because she was a hospital administrator, the Court will assume she was not a member and will treat her as a peer review participant for purposes of analyzing whether she acted in good faith during the peer review process in 2008.

The evidence reflects that, although Joy participated in the November 4, 2008 meeting, she did not notify Plaintiff of the recommendation to limit his reappointment until after it was made and approved by the Board. A reasonable jury might conclude that, as a result, Joy failed to act in good faith within the scope of the peer review process. The motion is **denied** with respect to Joy's participation in the 2008 peer review of the Plaintiff.

### 2. Banner Governing Board

Banner seeks immunity from Plaintiff's second claim for relief for "conspiracy." The sole requirement for immunity for a governing board and its members is good faith. *Nicholas*, 27 P.3d at 841. "'Good faith presupposes: (1) reasonable reliance upon the review committee's recommendations, unless there is knowledge that would render reliance unwarranted; (2) consideration of facts previously unknown to the review committee; (3) reasonable belief that the action taken was warranted by the facts; and (4) otherwise acting in good faith.'" *Id.* Good faith is not presumed if the Board or its individual members willfully ignore facts not previously considered that are pertinent to its review. *Id.* at 842.

Here, good faith is presumed for the Board's action in approving the MEC's recommendation. The Plaintiff has proffered no facts demonstrating an issue as to whether the Board unreasonably relied on the MEC's recommendation or failed to consider facts previously unknown. Thus, to the extent that the Plaintiff's conspiracy claim against Banner concerns the 2008 peer review process, the Court finds Banner is immune from suit on such claim. The motion is

**granted** in this respect.

## CONCLUSION

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, I therefore ORDER that Defendants'

Joint Motion for Summary Judgment Related to Qualified Immunity [filed August 30, 2010; docket

#75] is **granted in part and denied in part** as follows:

1.      All Defendants are granted immunity pursuant to the HCQIA and CPRA from

Plaintiff's first, second and fourth claims for relief to the extent they arise from the 2007 peer review

process;

2.      Defendants Nix, Soper, Bonelli, Elliff, and Joy are denied immunity pursuant to the

HCQIA and CPRA from Plaintiff's first, second and fourth claims for relief to the extent they arise

from the 2008 peer review process; and

3.      Defendant Banner is granted immunity pursuant to the CPRA from Plaintiff's second

claim for relief to the extent it arises from the 2008 peer review process.

Dated at Denver, Colorado this 9th day of November, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

31